NOT FOR PUBLICATION (Doc. No. 31)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| INTERSTATE OUTDOOR ADVERTISING, <br><br> Plaintiff, <br><br> v. <br><br> ZONING BOARD OF THE TOWNSHIP OF MOUNT LAUREL AND THE TOWNSHIP OF MOUNT LAUREL, <br><br> Defendants. | CONSOLIDATED CASE <br> Civil No. 09-1376 (RBK/AMD) <br><br> **OPINION** |
| INTERSTATE OUTDOOR ADVERTISING, <br><br> Plaintiff, <br><br> v. <br><br> ZONING BOARD OF THE TOWNSHIP OF MOUNT LAUREL AND THE TOWNSHIP OF MOUNT LAUREL, <br><br> Defendants. | |
| INTERSTATE OUTDOOR ADVERTISING, <br><br> Plaintiff, <br><br> v. <br><br> ZONING BOARD OF THE TOWNSHIP OF MOUNT LAUREL AND THE TOWNSHIP OF MOUNT LAUREL, <br><br> Defendants. | |

**KUGLER**, United States District Judge:

Before the court is Defendants' motion for summary judgment seeking dismissal of Plaintiff's claim that Mt. Laurel's Zoning Ordinance prohibiting the erection of outdoor advertising displays is unconstitutional on First Amendment, Fourteenth Amendment, and New Jersey State Constitution grounds. Upon evaluation of the merits of that motion, the Court finds that the ordinance is a reasonable means of achieving traffic safety and maintaining the natural beauty of the township. Furthermore, the court finds that the evidence the city relies upon is reasonably relevant to city's goals of achieving traffic safety and preserving aesthetics. The Court also finds that the Zoning Ordinance does not discriminate between similarly situated classes, and is not selectively enforced. Accordingly, Defendants' motion for summary judgment [Doc. No. 31] is granted.

**I. Background**

Interstate Outdoor Advertising ("Plaintiff" or "Interstate") is engaged in the business of erecting and leasing outdoor advertising structures in a variety of markets, including Mt. Laurel, New Jersey. Interstate's billboards are made available for both commercial and non-commercial purposes. (Gerber Cert. at 3: ¶5). Mt. Laurel first enacted a zoning ordinance banning billboards 23 years ago. (Section 154-81 of Ordinance 1988-7). In 2008, before Mt. Laurel amended its zoning code, Interstate filed nine (9) development applications to the Township Zoning Board of Adjustment ("Zoning Board") proposing to erect nine outdoor advertising signs in the Township along U.S. Interstate-295 (a major transportation corridor with three lanes of traffic in each direction). (See Norman Cert. at 7, Ex. C). After a public hearing on each application, the Zoning Board denied Interstate's requests. (Norman Cert., Exs. F, G, and H).

In 2008, Defendant Township adopted Ordinance 2008-12 (hereinafter "the ordinance") to ban off-site advertising signs such as those erected and leased by Interstate. The Zoning ordinance provides an extensive list of purposes in support of the terms of the ban; however, the primary justifications for the ban are the promotion of traffic safety and aesthetic improvement. As amended, the Zoning Ordinance provides:

> 154-84. Prohibited Signs. The following signs and sign-types are prohibited within the Township and shall not be erected. . . .
> (a)   Billboards. . . .
> (y)   Signs immediately adjacent to Interstate 295 and the New Jersey Turnpike.
> (Norman Cert. at 19-20, Ex. D).

Plaintiff challenges those denials and alleges that the Ordinance constitutes an impermissible restriction on freedom of speech in violation of the First Amendment. In response to Defendants' motion seeking dismissal of that claim, Plaintiff's primary argument is that the defendants have not shown a connection between a complete ban of off-site advertising throughout Mt. Laurel and the promotion of traffic safety and aesthetics.

## II. Legal Standard

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A genuine issue of material fact exists only if the evidence is such that a reasonable jury could find for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When the Court weighs the evidence presented by the parties, the Court is not to make credibility determinations regarding witness testimony. Sunoco, Inc. v. MX Wholesale Fuel Corp., 565 F. Supp. 2d 572,

3

575 (D.N.J. 2008). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255.

However, to defeat a motion for summary judgment, the nonmoving party must present competent evidence that would be admissible at trial. See Stelwagon Mfg. Co. v. Tarmac Roofing Sys., 63 F.3d 1267, 1275 n.17 (3d Cir. 1995). The nonmoving party "may not rest upon the mere allegations or denials of" its pleadings and must present more than just "bare assertions [or] conclusory allegations or suspicions" to establish the existence of a genuine issue of material fact. Fireman's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982) (citation omitted); see Fed. R. Civ. P. 56(e). "A party's failure to make a showing that is 'sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,' mandates the entry of summary judgment." Watson v. Eastman Kodak Co., 235 F.3d 851, 857-58 (3d Cir. 2000) (quoting Celotex Corp., 477 U.S. at 322).

## III. Analysis

### A. Standing

"The 'irreducible constitutional minimum' of Article III standing requires that the plaintiff demonstrate: (1) an injury-in-fact, (2) a causal connection between the injury and the defendant's conduct, and (3) a likelihood that the injury will be redressed by a favorable decision." Toll Bros., Inc. v. Twp. of Readington, 555 F.3d 131, 143 (3d Cir. 2009). The first two prongs of the standing requirement are not in issue. The Township contends that the Plaintiff's claim is not redressable and thus fails the third prong of the standing inquiry.

The Township asserts that because Interstate did not challenge the sign restrictions on height and size, the sign restrictions would prohibit Interstate's applications even if the provision

banning billboards were invalidated. See id. at 143. It is true that Plaintiff specifically named only § 154-84 in its amended complaint. However, Plaintiff asserted in its sur-reply[1] that it has challenged both the specific billboard prohibition and the entirety of the zoning ordinance, including the general bulk size requirements for signs, in its pleadings. (Plaintiff's Sur-Reply at 2-3). Plaintiff argues that the Township should amend their ordinance to allow for signs with reasonable height and size requirements. Therefore, Plaintiff has standing to challenge the Township's ordinance because Plaintiff's claim is redressable. See Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 504 (1981) (holding that plaintiff billboard company had standing to challenge restrictions on both commercial and noncommercial signs).

### B. Interstate's Free Speech Claim

Billboards can instigate communicative controversy via their display of strong ideological messages. Similarly, billboards are capable of instigating noncommunicative controversy via posing danger to drivers and interruption of the natural scenery. However, it has been recognized that "the government has legitimate interests in controlling the noncommunicative aspects of the medium . . ." Id. at 502. But because the regulation of the noncommunicative aspects of a medium often impinges on the communicative aspects, it is necessary for the Court to reconcile the government's regulatory interests with the individual's right to expression. Id. The Court must therefore ensure that "a sufficient basis" exists for Defendants' assertion that billboards pose traffic hazards and compromise the aesthetics of the community. Id. at 508.

---

[1] Under Local Civil Rule 7.1(d)(6) sur-replies are not permitted without leave of the Court. The Court hereby grants Plaintiff's request for leave to file a sur-reply.

The court analyzes the constitutionality of the ordinances in question under a four-part test. Cent. Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y., 447 U.S. 557, 562 (1980). Under this test, a court must first determine whether the communication concerns lawful activity and is not misleading. Second, in order for the restriction to withstand constitutional review, the State must assert that a substantial interest will be achieved by restricting commercial speech. If both inquiries yield positive answers, the Court must then determine whether the restriction directly advances the state's asserted interest. Finally, the Court must ensure that the restriction is not more extensive than is necessary to serve that interest. Id. at 566. To properly evaluate the last two elements of the Central Hudson, the Court must consider the "fit" between the legislative ends and the means chosen to accomplish those ends. Rubin v. Coors Brewing Co., 514 U.S. 476 (1995). The parties here do not dispute that the speech is lawful and agree that the Township's interests in traffic safety and aesthetics constitute substantial interests. However, Plaintiff argues that the Township cannot show that the Zoning Ordinance directly advances the Township's asserted interests in traffic safety and aesthetics or that the Zoning Ordinance is not more extensive than is necessary to serve those interests.

A regulation "may not be sustained if it provides only ineffective or remote support for the government's purpose." Central Hudson, 447 U.S. at 564. Moreover, regulations which "indirectly advance" a state interest should be struck. Id. Hence, a court must carefully consider whether the general application of the statute directly advances the government's interests. To perform this analysis, the Court first considers whether there is "a *sufficient basis* for believing that billboards are traffic hazards and are unattractive." Metromedia, 453 U.S. at 508 (emphasis added). If the Court finds such a basis, the Court accords broad deference to legislative judgment

of what constitutes regulations that directly advance substantial governmental interests. See id. at 453 U.S. at 509-10.

In Metromedia, the Court relied on legislative judgment in the absence of any evidence contradicting those judgments. Id. at 508 ("There is nothing here to suggest that these judgments are unreasonable."). Where evidence contradicting legislative judgments is produced, the municipality is entitled to Metromedia deference only if it supports its judgments with relevant evidence to justify infringement upon the fundamental rights of citizens. See Metro Lights, L.L.C. v. City of Los Angeles, 551 F.3d 898, 914 n.13 (9th Cir. 2009) (finding that Metromedia deference is properly applied upon a showing that the municipality's "Sign Ordinance . . . advances the City's interests and is narrowly tailored"). Some courts have required that municipalities produce scientific evidence, including studies, empirical data or professional literature to substantiate the connection between the government interest and the regulation at issue. See Burkow v. City of Los Angeles, 119 F.Supp.2d 1076, 1080 (C.D.Cal. 2000) (citing Edenfield v. Fane, 507 U.S. 761, 770-71 (1993)). In Burkow, the District Court struck down a law which prohibited citizens from displaying a "For Sale" sign on or in a vehicle, finding the regulation unsupported by any studies or evidence. Burkow, 119 F.Supp at 1080-81.

The New Jersey Supreme Court has similarly concluded that the government must show a legitimate governmental interest that is to be served by an ordinance, and must demonstrate a reasonable factual basis indicating that the regulation advances the governmental interest. Bell v. Twp. of Stafford, 541 A.2d 692, 698 (1988). In Bell, the New Jersey Supreme Court was called upon to evaluate the validity of an absolute billboard ban. Id. at 694. The Bell court noted that the municipality had the burden "to present and confirm those compelling legitimate governmental interests and a reasonable factual basis for its regulatory scheme in order to

validate its legislative action." Id. at 698. Because the record was devoid of any evidence, the Bell Court found that the municipality's regulation failed to pass constitutional muster.

A broad prohibition on billboards is an acceptable means of addressing the problems of traffic safety and aesthetic suitability that the Township seeks to address. See Metromedia, 453 U.S. at 508 ("the most direct and perhaps the only effective approach to solving the problems [billboards] create is to prohibit them"). Mt. Laurel's Zoning Ordinance states that the purpose for the Township's billboard ban is to enhance traffic safety and the aesthetics of the Mt. Laurel area. (Norman Cert. at 3-4, Ex. D). The central question is whether the Township has provided sufficient evidentiary basis to support a finding that billboards present aesthetic and traffic safety concerns.

> The final prong of Central Hudson does not require a showing that the legislating entity has employed the "least restrictive means" to accomplish its goals. See Lorillard Tobacco Co. v. Reilly, 533 U.S. 525, 554 (2001). So long as there is a reasonable fit between the means chosen and the ends identified, the regulation meets the fourth prong of this test. Id. at 556.

Nichols Media Group v. Twp. of Babylon, 365 F.Supp.2d 295, 309-310 (2005).

Plaintiff has not raised any issues of material fact in its opposition to Defendants motion for Summary Judgment.[2] Plaintiff has only presented conflicting expert opinions, which rely on studies that reach different legal conclusions than Defendant's traffic engineering reports.[3] The

---

[2] Defendant Mt. Laurel has failed to include a Local Rule 56.1 Separate Statement of Undisputed Fact to supplement its Summary Judgment brief. Failure to submit such a Rule 56.1 Statement is an appropriate grounds to deny the Defendant's motion. However, a court may excuse the failure to submit a Rule 56.1 statement where there is no evidence of bad faith. See, e.g., Rumbas v. Borough of Lawnside, 2008 U.S. Dist. LEXIS 60712 (D.N.J.2008) (Simandle, J.); Shirden v. Cordero, 509 F.Supp.2d 461, 463–64 n .1 (D.N.J.2007) (Martini, Jr.). For the purposes of this Summary Judgment motion, the Court has accepted all of the facts submitted in the Plaintiff's Rule 56.1 Statement as true. Nonetheless, the Court finds that Summary Judgment for the Defendant is appropriate here. While the Court will overlook the Defendant's failure to include a Rule 56.1 Statement in this instance, the Court impresses upon the Defendant that the Court will not be so lenient in the future if the Defendant again fails to follow the applicable rules.

[3] When deciding whether an expert report is sufficient to overcome a summary judgment, the court must make two completely distinct analyses. The court must first see whether the expert report meets evidentiary requirements set forth in Rule 703 of the Federal Rules of Evidence; if the evidence meets this level, then its ability to establish the existence of an essential element of the nonmoving parties case is evaluated. In re Paoli R.R. Yard PCB Litigation,

Court merely reviews the Township's data to determine whether "a plausible factual basis" exists for the conclusion that billboards negatively impact traffic safety and aesthetics. Metro Lights, 551 F.3d at 914 n.13.

### 1. Traffic Safety

The third prong of Central Hudson addresses whether the regulations at issue "directly and materially" advance the stated goals of the regulation. This prong is satisfied upon a showing that the ordinances reduce the concerns addressed by the ordinance "to a material degree." Lorillard, 533 U.S. at 555. To make this showing, a municipality can rely on evidence gathered from studies conducted in other geographic locations. Renton v. Playtime Theaters, Inc., 475 U.S. 41, 51 (1986). In Renton, the plaintiffs challenged the constitutionality of a zoning ordinance that prohibited adult motion picture theaters from locating within 1,000 feet of any residential zone, single or multiple-family dwelling, church, park or school. The Supreme Court held that notwithstanding the lack of studies specific to the Renton locality, the city had cited sufficient studies to support its justification for the municipal ordinance in question. "The First Amendment does not require a city, before enacting such an ordinance, to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the city relies upon is *reasonably believed to be relevant* to the problem that the city addresses." Renton, 475 U.S. at 51-52 (emphasis added).

Plaintiffs argue that the 2003 study cited by Defendants, "Standards for On-Premise Signs" from the United States Sign Council, is not relevant. Plaintiff correctly notes that the study was only designed to study on-premise signs, not off-premise billboards. In a similar case,

---

35 F.3d 717, 744 n.10 (3rd Cir. 1994); see also Brill v. Guardian Life Ins. Co. of Am., 666 A.2d 146, 158 (N.J. 1995) ("[A] party cannot defeat a motion for summary judgment merely by submitting an expert's report in his or her favor.").

the District of New Jersey, citing Renton, held that while parties may rely on evidence previously generated, that evidence must still be relevant to the circumstances at hand to be admissible. Interstate Outdoor Advertising v. Twp. of Cherry Hill, 672 F.Supp.2d 675, 680 (2009). Therefore, Mt. Laurel may not rely on the 2003 study, which by its own terms was designed exclusively to examine the traffic safety implications of on-site advertisements.

The Court is satisfied, however, that other studies cited by Mt. Laurel provide a sufficient basis for allowing the Court to review the connection between traffic safety and a total ban of billboards. The Township has produced extensive evidence upon which it relied when concluding that traffic safety is compromised in Mt. Laurel by off-site advertising signs. Among the evidence produced by Defendant are the 2006 National Highway Traffic Safety Administration Report, "The Impact of Driver Inattention on Near-Crash/Crash Risk: An Analysis Using the 100 Car Naturalistic Driving Study Data," which found that within a 95 percent confidence interval, "23 percent of the crashes and near crashes that occur in a metropolitan environment are attributable to eyes off the forward roadway for 2 seconds or more." (Litwornia Report at 4, Ex. L). The probability of an accident resulting from driver inattention was multiplied by a factor of 4 for drivers who were drowsy. Id.

The Defendants also cite a 2001 study, "Forensic Aspects of Vision and Highway Safety," which noted that drivers have good vision only in a cone of vision of approximately 20 degrees. "Visual acuity diminishes from the small cone of vision where a person focuses his attention." (Litwornia Report at 3, Ex. L). When a driver expands his vision "from an angle of 3 degrees to 10 degrees a person's acuity would [diminish] from 20/20 to 20/100." (Id.). This study provides reasonably relevant support for a legislative body's finding that billboards, which are

designed to attract driver attention, would be likely to result in dangerously poor vision of the roadway for the period of time that the driver is focused on the roadway.

Defendants also cited the Madigan-Hyland Study, a more local study, which measured accidents for two years along the NY State Thruway. The study showed that 32% of the accidents on the NY State Thruway occurred in segments of the highway system that contained outdoor advertisements, even though such areas comprised only 13% of the highway system. This represented an increase in accident rates in the areas containing advertising that was over triple the average rate. (Litwornia Report at 16, Ex. L).

Defendants cite several other site-specific studies, one of which is the Milwaukee County Stadium Variable Message Sign Study. The Milwaukee study showed that immediately after a Wisconsin billboard was installed in 1984 adjacent to Milwaukee County Stadium on I-94, vehicular crashes increased by 8% to 35% after installation, depending on the type of crash. In deciding whether to amend the 1988 ordinance in 2008, the Defendants considered several other studies not discussed here. (See Litwornia Report at 16-17, Ex. L).

Plaintiff cites several studies intended to show that billboards do not endanger motorists. Plaintiff attempts to discredit Defendant's findings by citing a 2007 study by Virginia Tech that concluded that there was no statistical correlation between billboards and traffic accidents. (Simoff Report at 3, Ex. N). However, the Court notes that the Virginia Tech Study was funded by the Outdoor Advertising Research and Education Foundation, an industry-sponsored organization, and had numerous methodological flaws.[4] For these reasons, another district court,

---

[4] For example, "the visibility distances are greater than the legibility distances but the legibility distances were used; crashes due to weather or senior related were excluded from the study; . . . [Importantly, the Virginia Tech Study] made the baseless assumption that conventional billboards are an acceptable baseline; a true comparison where billboards were absent in the before study was missing." (Litwornia Report at 5, Ex. L).

deciding a similar issue of billboard safety in 2005, excluded testimony from Dr. Lee, the principal investigator of the Virginia Tech Study.[5]

The studies cited by Defendant show a reasonable factual basis for believing that billboards are detrimental to traffic safety. Defendants relied on accident data specific to Mt. Laurel, which revealed that Mt. Laurel has a large number of accidents due to the high traffic volume within the municipality. Such data showed that from the years 2005-2007, there were 601 accidents, 156 injuries, and 3 fatalities in Mt. Laurel. (Litwornia Report at 17, Ex. L). Defendant also states that according to a 2007 report, the stretch of I-295 in the Mt. Laurel Township along mile post 41.6, for which Plaintiffs filed an application to erect a billboard, had high traffic volume (82,548 in 2007) (Defendant's Brief, 36).

The several studies cited by the Township could provide a legislative body with a reasonable basis for determining that a complete billboard ban is required to best promote traffic safety. In light of the above, the Court finds that the Township has supported its regulatory scheme with sufficient factual basis.

### 2. Aesthetics

The Court also finds that the Township has adequately shown that its asserted interest in aesthetics is sufficiently substantial in Mt. Laurel. A township has the right to determine its community's aesthetics, and may select the means for preserving the community's beauty. See Berman v. Parker, 348 U.S. 26, 33 (1954). However, a municipality cannot simply assert the importance of aesthetics and ignore First Amendment protections in the name of beautification.

---

[5] "[T]he Lee Study is so infected by industry bias as to lack credibility and reliability. This conclusion is supported not only by industry involvement in the design and execution of the study but also by the lack of peer review and the fact that there is no other scientific study with the same or similar conclusions regarding driver distraction. For these reasons, the court rejects Dr. Lee's conclusions regarding traffic safety." Nichols, 365 F.Supp.2d at 308.

"[Ae]sthetic judgments are necessarily subjective, defying objective evaluation, and for that reason must be carefully scrutinized to determine if they are only a public rationalization of an impermissible purpose." Metromedia, 453 U.S. at 490, While promulgating some limitations on outdoor advertising displays is plainly relevant to protecting the Township from commercial clutter, it is not as immediately apparent that forbidding them in *all* zones in Mt. Laurel would have an incremental effect on the aesthetic quality of the Township. Plaintiff argues that the Township need not have a complete billboard ban in the Township's industrial areas, and further notes that the Township's commitment to beautification is weakened when the zoning ordinance excepts onsite signs and bus shelter advertisements from the ban.

The Court must be wary of imposing its aesthetic preferences on Mt. Laurel. The Township must provide a plausible rationale supporting its decision to implement a total ban across all zones of Mt. Laurel of only off-site billboards. Mt. Laurel has made the aesthetic judgment that off-site signs pose greater risk of aesthetic harm to the community than on-site signs. There is precedent for this judgment, as the city in Metromedia's aesthetic distinction between onsite signs and off-site signs was upheld as reasonable. Metromedia, 453 U.S. at 510. The Metromedia Court accepted the City's decision to value one kind of commercial speech (onsite advertising) over another (off-site advertising). Id. at 514-515. Similar deference may be warranted here, but may only be accorded after careful scrutiny of the evidence provided by Mt. Laurel in support of its aesthetic judgments.

Mt. Laurel presents the following evidence on billboard aesthetics. First, Mt. Laurel notes that billboards are not aesthetically desirable since "the major aspect of an advertisement sign by definition is to distract a driver to read a message. Sign color, letter size, illumination create a stark contrast with the natural and manmade environment." (Litwornia Report at 20, Ex. L).

13

Second, Defendant notes that one of the main purposes of the federal Highway Beautification Act is to protect scenic areas and major highways from aesthetic harm. Third, "Mount Laurel considers the portion of I-295 in Mount Laurel scenic and is in the process of completing comments on an application to the NJDOT for scenic highway designation."[6] (Litwornia Report at 18, Ex. L). Mt. Laurel further notes that the need for aesthetic protection is greater in certain areas of high traffic volume than in other areas. As Defendant's expert report states, "the more complex the landscape, e.g. multilane highways, the longer the time frame in the viewing cycle necessary and therefore the more conspicuous signs need to be for specific detection." (Litwornia Report at 3, Ex. L). Because Mt. Laurel is a high-traffic volume area, the Township has few options for maintaining the natural beauty of its environment.

Mt. Laurel is a community that must deal with high traffic volume from the portion of interstate highway running through the Township. Despite commercial advantages that could accrue to the Township from allowing billboard advertisements on its highways, the Township has deemed that a ban on such advertisements is necessary to preserve the natural aesthetic beauty of its environment. The Court is satisfied that the Township has produced sufficient evidence to warrant Metromedia deference to the Township's aesthetic judgment. The Court therefore holds that the Township's billboard ban is a reasonable means of preserving the aesthetic environment of Mt. Laurel.

### C. Interstate's Equal Protection Claim

---

[6] Mt. Laurel also anticipates that their request for a scenic corridor designation will be granted, "as a request was submitted [to the NJDOT] and sent back for additional data and an expansion." (Litwornia Report at 20, Ex. L).

Interstate argues that N.J. Stat. Ann. § 52:27D-345(e) violates the Equal Protection Clause of the Fourteenth Amendment because it discriminates between on-site and off-site signs. That claim fails.

The Equal Protection Clause protects similarly situated individuals from unequal treatment under the law. U.S. Const. amend. XIV, § 1; see Kuhar v. Greensburg-Salem School Dist., 616 F.2d 676, 677 (3d Cir. 1980). In general, if a challenged law distinguishes between individuals based on their ability to exercise a fundamental right or by reference to race, national origin, alienage, illegitimacy, or gender, the court must review the law under a heighted standard of review. See Willing v. Lake Orion Community Sch. Bd. of Trustees, 924 F. Supp. 815, 820 (E.D. Mich. 1996). If a law does not involve a distinction implicating a fundamental right or a recognized classification, the law is presumed valid and rational basis review applies. Id. Significantly, the Equal Protection Clause applies only if the challenged law classifies individuals on some basis. See Amerada Hess Corp. v. Div. of Taxation, 490 U.S. 66, 79 (1989) (denying equal protection claims because there was "no discriminatory classification underlying the challenged statute). A government can classify individuals by enacting a law that contains a classification "on its face" or by applying a neutral law in a selective or discriminatory manner. See John E. Nowak & Ronald D. Rotunda, Constitutional Law 711 (7th ed. 2004).

In an equal protection challenge to a zoning law, the question is whether "the township has irrationally distinguished between similarly situated classes." County Concrete Corp. v. Twp. Of Roxbury, 442 F.3d 159, 171 (3d Cir. 2006) (citing Rogin v. Bensalem Twp., 616 F.2d 680, 689 (3d Cir. 1980)). Here, Plaintiff argues that the Township has irrationally distinguished between similarly situated classes in permitting on-site advertisements while banning billboards. However, Mt. Laurel has presented evidence that off-site billboards are more dangerous and

cause more aesthetic harm than on-site signs. (Litwornia report at 2-11, 15-19, Ex. L). Moreover, Mt. Laurel has not selectively enforced its billboard ban against Interstate or any other entity. Applying rational basis review, the Court finds that Mt. Laurel has demonstrated that the ordinance is rationally related to the legitimate government purposes of preventing traffic accidents within the Township and preserving the Township's aesthetic beauty.

### D. Interstate's State Constitutional Claims

Interstate asserts that the ordinance violates its right to free speech and equal protection as guaranteed by the New Jersey Constitution.

#### 1. Free Speech

Article I, Paragraph 6 of the New Jersey Constitution has been interpreted by New Jersey Courts to be no more restrictive than the federal free speech clause. Shelton College v. State Bd. of Educ., 226 A.2d 612, 622 (N.J. 1967); see Karins v. City of Atlantic City, 706 A.2d 706, 713 (N.J. 1998). Plaintiff cites no authority for the position that Article I, Paragraph 6 provides more expansive protections than the First Amendment. Thus, the Court finds that the Church's claim under the New Jersey Constitution fails for the same reasons that its First Amendment claim fails.

#### 2. Equal Protection

"Unlike its federal counterpart, the New Jersey Constitution does not contain an equal protection clause." State v. Chun, 943 A.2d 114, 142 (N.J. 2008). However, the New Jersey Supreme Court has found that "[a] concept of equal protection is implicit in" the New Jersey

16

Constitution's Due Process guarantee, N.J. Const. art. I, par. 1. McKenney v. Byrne, 412 A.2d 1041, 1047 (N.J. 1980). "Although conceptually similar, the right under the State Constitution can in some situations be broader than the right conferred by the Equal Protection Clause." Doe v. Poritz, 662 A.2d 367, 414 (1995). Moreover, the New Jersey Supreme Court applies a different analysis to equal protection claims under the New Jersey Constitution:

> In considering equal protection-based challenges, we have not followed the traditional equal protection paradigm of the federal courts, which focuses rigidly on the status of a particular protected class or the fundamental nature of the implicated right. Instead, when analyzing equal protection challenges under New Jersey's Constitution, we have applied a balancing test that weighs the nature of the affected right, the extent to which the governmental restriction intrudes upon it, and the public need for the restriction.

Chun, 943 A.2d at 142 (quotation marks and citations omitted).

Applying that standard, the Court finds that Plaintiff fails to state an equal protection violation under the New Jersey Constitution. Although the New Jersey Constitution can provide greater protection than the Federal Constitution, there is no evidence in this case that New Jersey's adoption or enforcement of the ordinance is based on any impermissible classifications or an intent to infringe upon Interstate's fundamental rights. There is simply no indication that the Township applies the ordinance in a discriminatory manner. Equal protection concepts therefore do not apply.

**IV. Conclusion**

Mt. Laurel's Zoning Ordinance clearly states the purposes for its ban on off-site advertising displays, and the court is satisfied that the Township's conclusions are supported by sufficient evidence. The Township has provided evidence demonstrating that the ordinance directly advances the substantial government interests of traffic safety and aesthetics, including

17

evidence that the Township considered less restrictive means and made a particularized inquiry regarding the ban and the areas upon which it would apply. For the reasons discussed above, the Court grants summary judgment for the Township. An appropriate Order shall issue contemporaneously with the filing of this opinion.


Dated:  9/19/11                                                                         /s/ Robert B. Kugler
                                                                                          ROBERT B. KUGLER
                                                                                          United States District Judge